Clerk, please call the next case. Attorney, 2905, David Kwiatkowski v. Workers' Compensation Commission, Clifton Agency, Illinois State Treasurer and recipient of the Great Workers' Benefit. Counsel, you may proceed. Good morning, Justices. Mitchell Kleinberg, Petitioner-Appointive. James Kwiatkowski was delivering newspapers for Swift News Agency during a dark early morning in March of 2008 when he slipped on the ice. He was the only person who testified at the hearing and did not present any witnesses. It also did not produce any additional evidence or medical evidence. As far as what we have today are two critical issues. I believe the first one is the employee-employee relationship. Well, that is the key question because if the Commission was correct that there was no employer-employee relationship, the rest is moot, is it not? Yes. Okay, so let's hone in on that issue. As far as the basis why there was an employee-employee, the evidence in what Mr. Kwiatkowski testified to, describing as far as issues like control, employer control. So the one issue he talks about, and this is from, the question was, and on what days did you deliver papers? I did Thursdays and Sundays and as early mornings. And how many days a week did you work? I worked four days a week. And did you have a set schedule? Yes. Did you have to clock in and out a certain location each day? Yes. So I think as far as the control issue, he does have a set schedule. And as far as what's also significant, he's delivering newspapers, and it's SWIFT News Agency, so it's very similar work. Well, he testified he had set hours. He did not testify that SWIFT set them. And basically he says it was up to him to do the job the way he wanted to. He had no immediate supervisor to report to, did he? Correct. As far as once he's starting the day, after he starts a day, he has no immediate supervisor. Maybe the best way to do this is quickly go over the factors that the commission used to find against the claimant on the basis of an employee. They first found that he drove his own vehicle at all times while delivering the papers, correct? Yes. Okay. He was paid on the jobs that he completed rather than any kind of an hourly wage or any kind of a salary, correct? Correct. Okay. Again, we talked about there was no supervisory control over him. He was able to call in and miss his shift when Arctic had work for him too, is that correct? Right. Okay. Don't all those factors point to him being an independent contractor? Well, I think those are factors, but I think what's overriding as far as he has a set schedule, he's also using equipment, using a forklift to unload the newspapers from the truck. So that's a SWIFT equipment. Did SWIFT withhold any money from his salary? Did the company, did SWIFT take any money out of his check, withhold any money for tax purposes? No. They didn't. Well, doesn't that also point to him being an independent contractor? Well, I think that's some evidence as far as I don't think it's overwhelming because it's often a situation where the employer wants to make it appear that he's an independent contractor, but if you look at what he's doing every day, as far as his job assignment every day is the same, and he's got the same schedule as far as being... That would be up to him. His job assignment is the same. If you're an independent contractor and you're cleaning houses or something, I mean, your job's going to be your job. The fact that he does the same job every day doesn't turn him into an employee, does it? He's hired to deliver papers, right? And that's what he does. He takes the newspapers off the truck, and then he delivers the papers, and as far as he's doing it, he has to do it at a certain time in the morning. Oh, yeah, because he's delivered papers at a certain time, right? Right. I mean, I'm looking for things that would take him out of being an independent contractor into an employee. I mean, the fact that he delivers newspapers early in the morning, it's inherent in the job, whether you're an independent contractor or an employee, correct? Right, but as far as... Did they control the way he delivered the papers? Well, as far as, I mean, certain newspapers, there's a set route, and as far as the manner, I mean, he used his car to some extent. But they didn't tell him what route to take. They just told him where the papers had to be delivered. Correct. He was totally unsupervised while he was doing it, was he not? While delivering, yes. As far as, but what's also important as far as the arbitrator, we relied on one page of the medical records, which made a reference to another employer, Bison, and as far as when we appointed that out to the commission, that there was a prior case involving Lison that had settled the commission. Apparently, all they did was adopt what the arbitrator did, so there's no indication that they even considered that issue, that what the arbitrator thought was significant about a different employer. It's really ‑‑ What is the fact that he did or did not work for a different employer have to do with the issues in this case? Well, that was one of the first points the arbitrator made was that it's not clear that he's working for Swift. There's this line, the only medical record, one page of one medical record refers to Lison, and the arbitrator appears to think that that was significant, that there's another employer involved, but as far as we explained it to the commission, that there was a prior case, and the record is just a computer printout, and it's not like there's a written note from the nurse or the doctor that the employee is saying he's working for Lison. It's just very apparent that it was from prior treatment on a prior case that had settled long before this case. Would you agree, though, that the fact that he was employed by somebody else in 2003 does not establish he was employed by Swift in 2008, does it? I mean, is it really that relevant to anything here? Notwithstanding the arbitrator thought it was interesting or focused on it, it really has nothing to do with this case. But the arbitrator relied on it, and it seemed to be very important in her decision, so I think it's important to point out where that case comes from. That's all. Okay. And talking about his duties, this is his testimony. My job duties were to get deliveries from the Sun Times and Tribunes on Fridays and Saturdays and Wednesdays and to set up for 15 different zip codes, which the zip codes were towns, unload the trucks, set them up, and coordinate a lot of people into what they're supposed to do, stacking the papers and then delivering them. So I think that's significant in showing he's got the same schedule. It's part-time when you made a reference to the other employer, and those records were in evidence, so it's not like we were hiding the other employer. But I think it's significant as part-time. It was always a set schedule, and it was unusual circumstances. If there was snow removal, he would call in ahead of time and advise his employer that he didn't need to work. So he's always advising, calling in. He's advising when he got hurt, he's calling in, telling the employer that he's not going to be at work. So I think all of those facts lead toward the employee-employer. And, again, all the facts are undisputed. And as far as I think that's significant as far as why no overview would be proper in this case, but even with the manifest weight, everything that's been provided from his testimony and the medical records is all undisputed. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honors. Counsel, may it please the Court, my name is Mary Labreck. I'm an Assistant Attorney General here representing the Illinois State Treasurer as Ex Officio Custodian of the Injured Workers Benefit Fund. The Commission's determination that the claimant failed to sustain his burden of proving an employee-employer relationship was not against the manifest weight of the evidence because he failed to demonstrate the existence of any working relationship at all. If there were such a relationship, he would have had evidence of employment or evidence of an independent contractor relationship, which might or may not have been misclassified. The only evidence of a working relationship that the claimant presented was his own testimony, and that testimony was not credible, largely because he failed to present evidence that we would expect him to present if his claims were true. I take it that's the withholding of money from his check that you're speaking about? There's a whole list of things. Actually, he failed to present a single piece of documentary evidence that connected him with SWIFT. And since the Commission had some credibility issues, that wouldn't necessarily make it a manifest weight and add it to no hold, would it? That's right. Okay. So he suggested he presented no pay stubs for SWIFT, even though he did present the pay stubs from the snow removal company that he worked for at the same time and employers that he worked for previously and subsequent to that date. He presented no bank statements to show deposits from SWIFT. He presented no W-2s, even though he claimed to have had three years' worth. And he did say that he testified that he had taxes deducted from his pay checks, but the Commission did not believe him because he presented no evidence of the W-2s. He presented no copy of a doctor's note that he said he presented to his employer to show when he had to be taken off work after the accident. He presented no contract, no employee handbook, no other materials. Did he receive any benefits that he testified to from SWIFT? Was he on any kind of insurance or anything? He said that they had no insurance, and he said that he received no benefits. They paid no money. And the medical records showed no evidence that he was injured on the job or that he was employed by SWIFT. And the point that the arbitrator was making when she mentioned M. Lison was not so much, I don't believe that she believed that he was definitely employed by M. Lison at that point, but rather that one usually expects to find some evidence in the medical record. And in addition to everything else, we didn't have that here. There's no suggestion in the medical record, either of the injury on the job or of his employment by SWIFT. And that's contrasted with the fact that he was employed by SWIFT. Did he have anything other than his own testimony? No. Not in the record. It does appear in his claim before the Workers' Compensation Commission, but there's no documentary evidence in anything else. You say it appears in his claim. I mean, he filed an application for the workers' benefits, and he did state that SWIFT was his employer in that. Well, that's the same as his testimony. Right. And that's what I'm saying. Apart from that, there is nothing that connects him. And that was what the arbitrator was remarking on. And the lack of such evidence was not merely inadvertent because he didn't ask the arbitrator for leave to submit such evidence when it became obvious that that was necessary or when it became obvious the negative inferences that can be found. You know, it's strange. You seem to make your argument based on what he didn't show. And that's not what the arbitrator based their decision on, other than the fact of the taxes. The arbitrator based the decision, which the commission affirmed and adopted, based upon the positive evidence in the record that SWIFT didn't set his hours. He was paid only for the duties he completed, not on an hourly basis. He didn't receive a salary. That's true. There was no real supervision. There was no evidence SWIFT controlled the exact manner in which he completed his duties. It appears that SWIFT did not particularly care about the manner in which each task was completed or performed. And additionally, the petitioner's alleged employment with Smith was not exclusive. As the records show, he worked for Arctic. So I think, briefly, when it boils down to it, is the arbitrator went through the initia of employment versus independent contractor, went down the elements, and came to the conclusion that all of the elements favored a finding of no employer-employee relationship. End of story. That's correct. I don't think what I'm saying is inconsistent with that. She said she pointed out first reasons why she had a credibility problem with what he said, and then she said even if he did work for them. Well, that's not what she – I'm reading it here. That's not what she said. I'm looking at page – I'm looking at page 6 of her decision. After setting forth what the requirements were for employer-employee and under where, was there an employer-employee relationship? She set forth the elements under where and then went through them. Ma'am, don't bother. It's not a big deal. I didn't read it. That's what she said, and I also kind of talked about that, too. She said even if there was a working relationship, then he presented no evidence that he was an employee rather than an independent contractor. And as you say, she said the single most important factor is whether the employee has a right to control. And here it was already suggested there was no supervisor and no one kept track of what he was doing. So there was someone in the office that overviewed the whole place, kind of like a building manager, but there was no one that he recognized himself as reporting to. Now he remembered only one partial name of someone he thought was a secretary slash coordinator. He didn't know names or roles of management. So for all we know, he could have just pulled up in the middle of the night, gone to the loading dock and picked up newspapers. Is that what you're trying to say? Well, his testimony was vague on certain points, and there are... I think you already hit on it. The arbitrator made some very detailed findings enumerating a number of factors as to why he was clearly an independent contractor and not an employee. So I think that should be sufficient. Okay. Yeah, there are only two factors that even slightly go in his direction, which is the relative degree of skill and the fact that, according to his testimony, they swift furnished the floor lifts and the wooden pallets. But those two simply aren't enough to justify overturning the commission's decision. Very good. Thank you. Thank you, counsel. Thank you. You may reply. Yes. As far as the supervision issue, obviously what he was talking about at the time that he was delivering the papers, obviously to know how to do that with the trucks, obviously he had to have some instruction. And he's doing the same job every day. I think that's significant. And as far as the medical records, how they support that falling on ice is certainly something that he was consistent with in all the medical records, how it happened, delivering papers. So I think that as far as compared to the rising issue, what the arbitrator got focused on to some extent, and I think what's significant there is that he was an operator, a machine operator, and so falling on the ice is something that's not likely to happen when you're working indoors as a machine operator. The commission never decided causation in this case. They never decided causation. I'm reading from the arbitrator's opinion. The arbitrator had already found that no employer-employee relationship existed between SWIFT News Agency and the petitioner, thus no benefits were awarded. And the arbitrator makes no findings with regard to whether an accident occurred that arose out of an enforced past employment. There is no issue in this case on causation. So why are we even talking about it? Because of the rising issue. Because that's the first thing the arbitrator mentioned in her decision is about the rising subject. I think it's worth distinguishing the type of work he was doing at Bison versus the type of work he's doing for SWIFT as far as you're not going to slip on the ice as far as working for Bison. That's the reason why it's important as far as just showing that it's not going to happen with that type of job. And she refers to it, the first point that she makes as far as in her decision for the employee-employee relationship. I thought we got past that, though. I didn't realize what happened five years earlier has nothing to do with this case. Really, we have a claimant who files a claim against SWIFT News Agency, and all the testimony is I'm an employee of SWIFT News Agency just based on my testimony. Is that correct? And the medical records. There's no pay records. He just says I deliver papers and I pick them up from SWIFT News Agency, right? Right. And then I'm paid, right? That's when he states that, yes. Okay, and there's no documentary evidence to support that oral testimony. About working for SWIFT, correct?  Okay, that's kind of the issue, isn't it? Right. However, there's no rebuttal evidence, and there's nothing to show that why the focus of credibility had to do with that bison issue, I believe. The key is I think we all know the case for that oral testimony can be enough, particularly when there's no rebuttal, and they have no records to show that what he's saying is not true. Okay, thank you. Thank you, Counsel Bowles. This matter was taken under advisement. Written disposition shall issue. Panel stand and brief recess.